UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

TED FRANSE,

    Plaintiff,

v.

SANDLAPPER SECURITIES, LLC.,

    Defendant.

No. 2:17-cv-02207-MCE-DB

**MEMORANDUM AND ORDER**

Through the present action, Plaintiff Ted Franse ("Plaintiff") alleges that Defendant Sandlapper Securities, LLC ("Defendant") wrongfully terminated its Independent Contractor Agreement ("the Agreement") with Plaintiff. Under the terms of that Agreement, Plaintiff agreed to serve as a licensed securities representative for Defendant. Defendant now seeks an order compelling arbitration in accordance with the Agreement's provisions. Defendant further requests that the Court dismiss the instant lawsuit once it compels arbitration. For the reasons stated below, Defendant's Motion to Compel Arbitration (ECF No. 8) is GRANTED.[1]

///

///

---

[1] Because oral argument would not be of material assistance, the Court ordered this matter submitted on the briefs. E.D. Cal. Local Rule 230(g).

1

**BACKGROUND**

On or about April 10, 2017, Plaintiff was retained by Defendant as an independent contractor. At the same time, Plaintiff entered into a business relationship with two other Sandlapper entities. He was hired as an Investment Advisor Representative for Sandlapper Wealth Management, LLC and a Life Agent for Defendant Sandlapper Insurance Services, LLC.

Plaintiff alleges that he did work for Defendant from his home office from April 11, 2017 until July 6, 2017 and in so doing transferred the majority of his previous clients to Defendant. On July 6, 2017, however, according to Plaintiff's Complaint, Defendant "abruptly and without warning terminated the Agreement, without cause or explanation, and did not provide Plaintiff with a written explanation for the termination." Pl's Compl., ECF No. 1, ¶ 11. Plaintiff claims that Defendant subsequently filed false and defamatory allegations with the Financial Industry Regulatory Authority ("FINRA") in furtherance of an attempt to convert Plaintiff's customers and commissions. Id. at ¶¶ 13-14. Finally, Plaintiff alleges that Defendant has failed and refused to account for commissions it owes him, and has interfered with his attempts to transfer his customers to Ni Advisers, a broker-dealer with whom he subsequently obtained a position. Id. at ¶¶ 19, 21.

Citing diversity jurisdiction, Plaintiff filed the instant lawsuit in this Court on October 23, 2017. Plaintiff's Complaint includes state-law causes of action for breach of contract, breach of the covenant of good faith and fair dealing, conversion, defamation and intentional infliction of emotional distress. On December 6, 2017, Defendant filed the motion presently before the Court for adjudication, which as stated above asks for an order compelling arbitration of Plaintiff's claims pursuant to the terms of the Agreement.

The Agreement contains a broadly worded clause which mandates arbitration of all disputes between a "Representative" and Sandlapper "Affiliates", and provides as follows:

///

> **ARBITRATION**. Any controversy or disagreement between Representative and the Affiliates, arising out of Representative's business or this Agreement shall be submitted to arbitration conducted before FINRA, in accordance with its rules. Venue in any matter arbitrated pursuant to this provision shall be Greenville, SC.

Ex. "A" to Pl's Compl, p. 13, Section 13.

The Agreement defines the term "Representative" as Plaintiff herein, and Sandlapper is collectively defined in the first paragraph as Sandlapper Securities, LLC, Sandlapper Wealth Management, LLC, and Sandlapper Insurances Services, LLC. The Agreement goes on to refer to Sandlapper either collectively or with respect to a specific "affiliate" or "affiliates." The term "Affiliates" appears to relate to any of the three Sandlapper entities enumerated above. In fact, the Agreement specifically states that "i[f] an activity is applicable to a specific Affiliate it shall be referred to by its name." Id. at p. 1.

The body of the Agreement contains numerous references to "Sandlapper or any of the Affiliates." Id. at Section 9.1, 10, 12.3. In addition, the signature page of the Agreement is made on behalf of "Sandlapper Securities LLC and Affiliates," presumably in reference to the Sandlapper entities described in the initial paragraph.

Plaintiff, in opposing the Motion to Compel now before the Court, argues that because the arbitration clause enumerated above pertains only to "Representative" and "Affiliates," it does not refer to the entity now seeking to compel arbitration, Defendant Sandlapper Securities, LLC.

## STANDARD

The Federal Arbitration Act ("FAA") governs the enforcement of arbitration agreements involving interstate commerce. 9 U.S.C. § 2. The FAA allows "a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States District Court . . . for an order

directing that such arbitration proceed in the manner provided for in [the arbitration] agreement. 9 U.S.C. § 4. Valid arbitration agreements must be "rigorously enforced" given the strong federal policy in favor of enforcing arbitration agreements. Perry v. Thomas, 482 U.S. 483, 489-90 (1987) (citation omitted). To that end, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985) (emphasis in the original).

The Supreme Court has repeatedly recognized the strong national policy favoring arbitration. See, e.g., Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24-25 (1991) (FAA's "purpose was …. to place arbitration agreements upon the same footing as other contracts," and recognizing a "liberal federal policy favoring arbitration agreements"); Shearson/Am. Express Inc. v. McMahon, 482 U.S. 220, 226 (1987) (FAA "establishes a 'federal policy favoring arbitration,' . . . requiring that we rigorously enforce agreements to arbitrate.'" (citations omitted); Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 625 (1985) (federal policy of FAA is one which guarantees the enforcement of private contractual arrangements).

Given this policy, it is clear that a court is obligated to liberally interpret and enforce arbitration agreements and to do so "with a healthy regard for the federal policy favoring arbitration." Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). Significantly, too, any doubts concerning arbitrability should be resolved in favor of arbitration: Mitsubishi Motors Corp., 473 U.S. at 624 n.13 (noting that the appellate court "properly resolved any doubts of arbitrability"): see also Hodsdon v. Bright House Networks, LLC, 2013 WL 1499486 at *2 (E.D. Cal. Apr. 11, 2013) ("Because there is a presumption in favor of arbitration, the Court is required to resolve any doubts concerning the scope of arbitrable issues in favor of arbitration.").

In determining the validity of an agreement to arbitrate, the district court looks to "general state-law principles of contract interpretation, while giving due regard to the

federal policy in favor of arbitration." Wagner v. Stratton Oakmont, Inc., 83 F.3d 1046, 1049 (9th Cir. 1996).

## ANALYSIS

### A. The Parties Agreed To Arbitrate.

There is no dispute that Plaintiff signed the Agreement, and it is equally undisputed that the Agreement contained the arbitration provision enumerated above. Nor does Plaintiff dispute that the term "Representative" as used in the arbitration clause refers to him. Instead, Plaintiff takes the position that "Affiliates" does not encompass Defendant Sandlapper as the party seeking to compel arbitration. This is because, according to Plaintiff, "there is no mention whatsoever of Defendant 'Sandlapper Securities LLC' in the arbitration clause." Pl's. Opp., 2:15-16. Plaintiff contends that because the Agreement refers both to "Sandlapper" and to "Affiliates," sometimes separately, they should be deemed "different entities that are not synonymous." Id. at 2:24-26. The Court is unpersuaded.

As the party resisting arbitration, Plaintiff bears the burden of proving that arbitration is improper. Zenelaj v. Handybook Inc., 82 F. Supp. 3d 968, 971 (N.D. Cal. 2015) (citing Green Tree Financial Corp. v. Randolph, 531 U.S. 79, 91 (2000)). A court must compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." AT&T Tech., Inc. v. Communications Workers of Am., 475 U.S. 643, 650 (1986).[2]

Therefore, in assessing the scope of the arbitration clause here, the Court must determine whether it can be construed to encompass the dispute between Plaintiff and

---

[2] While Plaintiff cites principles of general California contract law to the effect that any potential ambiguity in a document should be interpreted against the party who caused the alleged uncertainty to exist (see Cal. Civ. Code § 1654), those principles cannot trump Supreme Court authority directly applicable to arbitration provisions like that confronted in the present matter.

5

Defendant Sandlapper Securities, LLC, despite the fact that the clause itself uses the phrase "the Affiliates" rather than identifying Sandlapper specifically. The Court believes that including Sandlapper Securities, LLC, within the term "Affiliates" is in fact the only reasonable way the arbitration clause, in conjunction with the remainder of the Agreement, can be interpreted.

As indicated above, the signature page of the Agreement is made on behalf of "Sandlapper Securities LLC and Affiliates," and the Agreement's introductory paragraph refers to Sandlapper Securities and two other Sandlapper entities collectively as "Sandlapper." Agreement, Ex. "A" to Pl's. Compl, p. 1. The Agreement's prefatory language goes on to indicate that "i[f] an activity is applicable to a specific Affiliate it shall be referred to by its name." Id. Given the earlier reference to the Sandlapper entities just preceding the reference to affiliates, the only reasonable interpretation is that the term "Affiliate" or "Affiliates" refers to those entities. This is borne out by the remainder of the Agreement, which refers to interchangeably to both Sandlapper collectively (with Sandlapper having been defined as all three entities) as well as "Affiliate" or "Affiliates." In addition, the body of the Agreement contains numerous references to "Sandlapper or any of the Affiliates," again suggesting that the terms are synonymous (id. at Section 9.1, 10, 12.3), particularly since the Agreement provides that if a single Affiliate is to be targeted it must be specifically referenced by name.

This conclusion, as well as the intent of the parties, is further supported by FINRA's Form U-4, which Plaintiff had to prepare and file in order to become registered with Sandlapper. Like the Agreement, that Form also acknowledges that disputes are to be resolved through arbitration:

> I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules. . . [of the regulatory authorities] . . ., and that any arbitration award rendered against me may be entered as a judgment in any court of competent jurisdiction.

///

1  Form U-4, Individual/Applicant's Acknowledgment and Consent, Section 15.5, attached
2  as Ex. 2 to Def's Mot., ECF No. 8.[3]  In Form U-4, which Plaintiff himself prepared, there
3  can be no doubt that he agreed to arbitrate with Defendant, since the term "firm" as used
4  in that form undisputedly applies to Sandlapper Securities, LLC.
5        While Plaintiff urges the Court to ignore the import of Form U-4, either on grounds
6  that he did not knowingly sign the document or that Plaintiff's failure to agree to
7  arbitration in the Agreement supersedes Form U-4 in any event, those arguments too
8  are unavailing.  The Court has already rejected Plaintiff's argument that the Agreement
9  itself does not provide for arbitration of disputes with Defendant.  With respect to his
10 remaining contention, it is clear that "[b]efore engaging in activities as a registered
11 representative for a FINRA-member firm, all registered representatives of broker-
12 dealers, investment advisors, and securities issuers must sign a [Form U-4]."  Valentine
13 Capital Asset Mgmt., Inc. v. Agahi, 174 Cal. App. 4th 606, 613 (2009).  In addition, by
14 expressly rejecting the argument that an individual was not bound by Form U-4 because
15 he did not execute the document, Valentine undercuts Plaintiff's apparent contention that
16 he did not actually sign the form.  Id. at 613-616.  In the court's mind, it was dispositive
17 that the representative "did not dispute the fact of his registration or suggest any way he
18 could have registered without signing Form U-4," and therefore found he was bound by
19 its arbitration provision.  Id. at 615.  Consequently, even if there were ambiguity in the
20 Agreement itself, which the Court does not believe there is, Form U-4 also points
21 towards arbitration of the instant dispute.
22       In sum, the Court finds that the Agreement cannot be interpreted any other way
23 than including Defendant within the term "Affiliates" as used in the arbitration clause.
24 Consequently, the Court rejects Plaintiff's claims otherwise, since to do so would
25 essentially render the arbitration clause meaningless, an approach antithetical to both

---

[3] Form U-4 is consistent with FINRA's Code of Arbitration Procedure for Industry Disputes, which at Section 13200(a) provides that as between a "member firm" like Defendant and a "associated person" like Plaintiff, disputes must be arbitrated if they arise "out of the business activities of a member or an associated person" and are between a member firm and an associated person.

federal law favoring arbitration as discussed above, and well-settled California principles of contract interpretation, which provide that "[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." Zalkind v. Ceradyne, Inc., 194 Cal. App. 4th 1010, 1027 (citing Cal. Civ. Code § 1641).

### B. The Parties' Agreement To Arbitrate Extends To The Instant Dispute.

Having determined that the arbitration clause does indeed encompass the parties to this litigation, we must next determine whether Plaintiff's claims themselves are subject to arbitration. Pursuant to the Agreement, Plaintiff assented to arbitrate "[a]ny controversy or disagreement between Representative and the Affiliates, arising out of Representative's business or this Agreement." Pl.'s Compl., Ex A, p. 13, Section 13. Plaintiff nonetheless asserts that the subject matter of his claims do not lend themselves to arbitration because they do "not arise out of [his] business" pursuant to the Agreement's arbitration clause, and additionally do not arise out of either Defendant's "business activities" or his own as contemplated by Section 13200(a) of FINRA's Industry Code. By limiting the scope of arbitration to such business activities, according to Plaintiff, arbitration should extend "solely to disputes arising out of 'business activities' relating to securities brokerage activities on behalf of customers." Pl.'s Opp., 9:11-13. Again, the Court does not find this argument persuasive.

First, to the extent Plaintiff argues that the dispute must relate to brokerage activities on behalf of customers, the one case he cites, Valentine Capital, fails to support that distinction. Instead, Valentine found only that the parties dispute was outside the scope of arbitration under FINRA because the dispute concerned an investment advisory firm that was not a FINRA member firm, and therefore could not come within Section 13200(a)'s mandate for arbitration between a FINRA-member firm and an "associated person" like Plaintiff. 174 Cal. App. 4th at 615-20. Here there is no dispute that Defendant was a member firm under FINRA. Secondly, Plaintiff's claims are based entirely on Defendant's termination of the Agreement and the circumstances and

8

grounds therefor, which necessarily entails a business dispute between the parties falling squarely within the business activities encompassed by both the Agreement and Section 13200(a). Moreover, as Defendant points out, Plaintiff's claims, regardless of how they are characterized, seek damages for harm he allegedly suffered as a result of having entered into the Agreement. Therefore, any argument that the instant dispute does not arise out of a business dispute between Plaintiff and Defendant utterly lacks merit.

### C. The Parties Agreed To Arbitrate In South Carolina.

The Agreement's arbitration provision provides unequivocally that "venue in any matter arbitrated pursuant to this provision shall be in Greenville, SC." Ex. "A" to Pl's. Compl, p. 13, Section 13. Plaintiff asserts that if the Court does compel arbitration, allowing the proceedings to take place in South Carolina "would be oppressive, burdensome, unfair and inconvenient" to Plaintiff, who allegedly performed all services on Defendant's behalf from his home office in Fair Oaks, California and has no relationship to Greenville, South Carolina. Pl.'s Opp, 10:21-25. While Plaintiff urges the Court to accordingly transfer the matter pursuant to 28 U.S.C. § 1404, that provision has no applicability to the present arbitration proceedings, since it allows the Court only to transfer the matter to another district court.

### D. The Present Matter Will Be Dismissed.

A district court has authority to grant a dismissal under Federal Rule of Procedure as(b)(6) where a complaint and the attached exhibits demonstrate that all claims are barred by an arbitration clause. Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc., 368 F.3d 1053, 1060 (9th Cir. 2004) (citing Chappel v. Lab Corp. of America, 232 F. Supp. 2d 719, 723-25 (9th Cir. 2000). Defendant consequently urges the Court to dismiss the instant complaint in its entirety. While Plaintiff disputed both the validity of the arbitration clause and its application to the present proceedings, he offers no opposition to Defendant's request that the matter be dismissed upon the Court's

///

determination of arbitrability. Consequently, the Court will dismiss the action at this juncture.

**CONCLUSION**

For the reasons stated above, Defendant's Motion to Compel Arbitration (ECF No. 8) is GRANTED and Plaintiff's case is accordingly dismissed. The Clerk of Court is directed to close the file.

IT IS SO ORDERED.

Dated: August 24, 2018

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE